**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

NEB MORROW, III,

Plaintiff,

v.

9:19-CV-1628
(DNH/ATB)

C.H.O. BAURSFELD,

Defendant.

---

NEB MORROW, III, Plaintiff, pro se
LAUREN R. EVERSLEY, Asst. Attorney General, for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge. Presently before the court is a motion to dismiss the second amended complaint ("SAC") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 21). Plaintiff has responded in opposition, and defendant has filed a reply. (Dkt. Nos. 24, 26). For the following reasons, this court agrees with plaintiff and will recommend denying the motion to dismiss.

## I. Procedural Background

Plaintiff filed his original complaint on December 30, 2019. (Dkt. No. 1). He signed the complaint on December 26, 2019. (Dkt. No. 1 at p.16). In his original complaint, plaintiff sued defendant Commissioner's Hearing Officer ("CHO") Baursfeld; Harold Graham, Superintendent of Auburn Correctional Facility; Sergeant ("Sgt.") Van Fleet; and Corrections Officer ("CO") J. Perkins. (Dkt. No. 1). On

January 2, 2020, the case was administratively closed because plaintiff failed to comply with the procedures for applying to proceed in forma pauperis ("IFP"). (Dkt. No. 2).

On January 30, 2020, plaintiff filed his first amended complaint ("FAC"), together with a proper motion to proceed IFP. (Dkt. Nos. 3-5). United States District Court Judge David N. Hurd reopened the case on January 31, 2020. (Dkt. No. 6). On February 27, 2020, Judge Hurd conducted an initial review of the first amended complaint, dismissing the action against defendants Graham, Van Fleet, and Perkins as time barred. (Dkt. No. 7 at 8-14). Judge Hurd determined that the action was not time-barred as against defendant Bauersfeld, and directed a response. (Dkt. No. 7 at 14-15). Judge Hurd also afforded plaintiff the opportunity to file a second amended complaint relative to the dismissed claims/defendants. (Dkt. No. 7 at 15-16).

On May 4, 2020, plaintiff filed his second amended complaint ("SAC"). (Dkt. No. 17). Defendant made a motion to dismiss the ***first*** amended complaint on June 11, 2020. (Dkt. No. 18). However, on June 12, 2020, Judge Hurd issued an order, deeming the second amended complaint to be the operative pleading, finding that only the retaliation claim as against defendant CHO Baursfeld survived sua sponte review and required a response by defendant.[1] (Dkt. No. 19). In a separate order, Judge Hurd denied the defendant's first motion to dismiss as moot based on the acceptance of the second amended complaint, as modified. (Dkt. No. 20). Judge Hurd gave the defendant the opportunity to file a new motion to dismiss. (*Id.*) Defendant's counsel filed the current motion to dismiss on June 18, 2020. (Dkt. No. 21).

[1] Judge Hurd found that nothing in plaintiff's second amended complaint changed his decision regarding the statute of limitations. (Dkt. No. 19 at 6-10).

## II. Facts

Plaintiff claims that on May 9, 2016, he wrote a complaint to Deputy Superintendent of Security ("DSS") Fagan, in which he alleged that D-Block Sergeant Van Fleet allegedly "misuse[d]" the morning count wake-up bell.[2] (SAC ¶ 1).[3] Plaintiff states that he wrote another "complaint" about Sgt. Van Fleet on May 10, 2016. (SAC ¶ 3). The May 10th complaint, which complained about the same conduct, was addressed to Superintendent Graham and referenced the letter that plaintiff had written to DSS Fagan on May 9th. (*Id.*) Plaintiff claims that, later in the day on May 10th, Sgt. Van Fleet called plaintiff to the "front desk" to "confront him about the "complaint." (SAC ¶ 3). As a result, plaintiff wrote another letter to Superintendent Graham about the confrontation.[4] (SAC ¶ 3 & Ex. 2).

Plaintiff states that CO Perkins worked on D-Block "as a regular," during the time that Sgt. Van Fleet was allegedly using the morning bell to harass inmates. (SAC ¶ 8). Plaintiff claims that on May 12, 2016, Sgt. Van Fleet and two other officers

---

[2] Plaintiff claimed that Sgt. Van Fleet turned the bell on and off in an attempt to annoy and harass the inmates on the block. (SAC ¶ 1).

[3] The court notes that the second amended complaint refers to exhibits which were filed with the original complaint and which Judge Hurd considered when conducting the initial review of all of plaintiff's complaints. Although Judge Hurd directed the Clerk to file the exhibits with plaintiff's first amended complaint, he did not repeat that direction for the second amended complaint. However, it is clear that plaintiff intended these exhibits to be included with the second amended complaint. Thus, this court will consider that plaintiff's exhibits 1-27, and will direct the Clerk to file them with the second amended complaint.

[4] Plaintiff states that he also mailed copies of "this" May 10th complaint to the Office of Special Investigations, Deputy Commissioner Vernon J. Fonda, Assemblyman Jeffrion [sic] Aubry, and Cayuga County District Attorney Jon E. Budelmann. (SAC ¶ 9 & Ex. 3). Plaintiff has included only the cover letters that he sent to the above individuals as Exhibit 3. Plaintiff alleges that he wrote two letters on May 10th, so it is unclear which May 10th "complaint" he mailed to them. (Pl.'s Exs. 1, 2).

harassed plaintiff by stating loudly that plaintiff was the "'Superintendent's Rat,'" in an attempt to put plaintiff's life in danger. (SAC ¶ 10). Plaintiff filed a grievance against Sgt. Van Fleet describing this incident and another incident in which plaintiff claims that another inmate saw Sgt. Van Fleet "pointing plaintiff out" to another guard in the South Yard. (SAC ¶ 11 & Ex. 6).

Plaintiff states that on May 15, 2016, Auburn was "locked down" for an institutional search, and D-Block was the last housing unit searched. (SAC ¶ 12). On May 17, 2016, plaintiff claims that he was denied his lunch meal by CO Haltson, who told plaintiff to "write to the Superintendent" after Halston "stomped" on plaintiff's bagged lunch and kicked it toward him on the ground. (SAC ¶ 13). Plaintiff claims that CO Halston's conduct was in retaliation for plaintiff's grievance against Sgt. Van Fleet.[5]

Later in the day on May 17, 2016, plaintiff's cell was searched by Sgt. Perkins. (SAC ¶ 14). Plaintiff states that he was "escorted away from the cell by C.O. Harrington," to be taken through a metal detector to check for any metal weapons that could be secreted on an inmate's person. (SAC ¶ 15). Plaintiff states that CO Perkins did not wait for CO Harrington to return to the cell with plaintiff before CO Perkins entered plaintiff's cell. Plaintiff states that CO Perkins did so in order to plant a nine-inch knife on top of a stack of plaintiff's legal work[6] unobserved by the plaintiff. (SAC ¶ 16).

---

[5] CO Halston was never named as a defendant in this case.

[6] The legal work was under plaintiff's bed.

Plaintiff claims that, not more than ten seconds after CO Harrington returned to the cell with plaintiff, CO Perkins pretended to look under plaintiff's bed and called for Area Sergeant Harte, who came to plaintiff's cell, and also looked under the bed. (SAC ¶ 17). Sergeant Harte lifted the knife from plaintiff's legal work, plaintiff was immediately handcuffed, and he was taken to the Special Housing Unit ("SHU"). Plaintiff was served with a misbehavior report on May 17, 2016, charging him with possession of a weapon (Disciplinary Rule 113.10). (SAC ¶ 22 & Ex. 11).[7]

Plaintiff states that on May 18, 2016, he filed a grievance against CO Perkins, claiming that he planted the knife in plaintiff's cell. (SAC ¶ 18 & Ex. 7). Plaintiff states that on May 24, 2016, he filed a grievance against Superintendent Graham, complaining about the Superintendent's "inaction," which allegedly led to plaintiff "being framed by Perkins ***for*** Sgt. Van Fleet." (SAC ¶ 19 (emphasis added) & Ex. 8). Plaintiff states that his May 24th grievance was consolidated with the May 18th grievance and denied. (SAC ¶¶ 19-20). Plaintiff appealed the denial of this grievance. (SAC ¶ 20 & Ex. 9). The Central Office Review Committee ("CORC") finally denied plaintiff's grievance on November 9, 2016. (SAC ¶ 21). Plaintiff states that he continued to write to Superintendent Graham, with no response, although he was able to obtain the contraband receipt and the "unusual incident" report. (SAC ¶ 23, 24 & Ex.

[7] The second amended complaint lists the Misbehavior Report as Exhibit 11. (SAC ¶ 11). However, the Misbehavior Report is filed after the label for Exhibit 10, which is entitled CORC Decision. The next set of exhibits begins with Exhibit 12, which is a copy of the "contraband receipt." It is possible that the "Exhibit 11" label for the Misbehavior Report is missing.

12).[8]

Plaintiff states that his disciplinary hearing began on May 20, 2016, with defendant CHO Bauersfeld presiding as the hearing officer. (SAC ¶ 26). Plaintiff states that one of his inmate witnesses testified over the telephone that Sgt. Van Fleet pointed plaintiff out to "several" guards in the South Yard. (SAC ¶ 26).[9] Plaintiff states that, after the hearing, he sent CHO Bauersfeld a "written objection" to the proceedings, arguing that the search was conducted in violation of the Department of Corrections and Community Supervision ("DOCCS") Directive "4910(v)(c)(1),"[10] which prohibits an officer from searching an inmate's cell outside of the inmate's presence. (SAC ¶ 27 & Ex. 14). Plaintiff claimed that CO Perkins's testimony was "not credible evidence" based on his violation of the DOCCS Directive. (*Id.*) Plaintiff alleges that defendant Bauersfeld "inexplicably" found plaintiff guilty, even after being informed of the alleged violation of cell search procedures.[11] (SAC ¶ 28). Plaintiff also attempted to

---

[8] The second page of Exhibit 12 is a ***Memorandum*** from CO Perkins to Sgt. Harte regarding the search and recovery of the weapon. The label for Exhibit 12 also lists this document as a memorandum. The court assumes that this is the document that plaintiff identifies as the "unusual incident" report in the second amended complaint.

[9] Plaintiff also cites his Exhibit 13b and the "transcript of the hearing," but Exhibit 13b consists only of the document in which witnesses are "requested" and indicates that one witness refused to testify but, other than listing the witnesses names, does not have much further information. In addition, there is no "transcript" of the hearing attached to the SAC or the original complaint.

[10] Although plaintiff's citation to this section was correct, the section appears to have been renumbered, and the current section of Directive 4910 that refers to the presence of inmates during a search is No. 4910 (V)(D)(1). The relevant portion of this section reads as follows: "'[i]f the inmate is removed from quarters prior to [a] search, he or she shall be placed outside the immediate area to be searched, but allowed to observe the search.'" *See Matter of Mingo v. Chappius*, 106 A.D.3d 1160, 1161 (3d Dep't 2013) (alteration in original, citing to Directive 4910 (V)(C)(1)).

[11] Plaintiff was sentenced to 180 days in SHU, together with a loss of privileges. (Pl.'s Ex. 15 at 1). The hearing determination was reversed on August 22, 2016. (SAC ¶ 38, Pl.'s Ex. 20). However,

explain why he believed he was "set up" by CO Perkins at the behest of Sgt. Van Fleet by submitting his grievances to defendant Bauersfeld for his review.

On June 3, 2016, after the hearing was completed, plaintiff filed a grievance against defendant CHO Bauersfeld, alleging that he found plaintiff guilty in retaliation for all the grievances and complaints that he wrote against Sgt. Van Fleet. (SAC ¶ 29). The grievance was denied, and plaintiff appealed to the CORC, which finally denied his appeal as "non-grievable"[12] on December 28, 2016. (SAC ¶¶ 30-31). However, the CORC also noted that the disciplinary hearing was "subsequently reversed upon appeal . . . because [plaintiff] was not allowed to observe the search." (Pl.'s Ex. 18). The CORC also stated that the reversal of the disciplinary hearing did not confirm any wrongdoing by staff or call into question the "appropriateness of issuing the report as a means of documenting what transpired." (*Id.*) Finally, the CORC noted that defendant Bauersfeld denied harassing and retaliating against plaintiff and claimed that he was impartial throughout the hearing.[13] (*Id.*)

## III. <u>Motion to Dismiss</u>

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face."

---

plaintiff claims that he was not released from SHU until September 16, 2016. (SAC ¶ 39 & Ex. 21).

[12] Because plaintiff's claims impacted the result of a disciplinary hearing, the IGRC, the Superintendent, and the CORC all determined that the plaintiff's complaint against defendant Bauersfeld was "non-grievable" and had to be resolved through the disciplinary appeal process. (Pl.'s Exs. 16-18). Plaintiff states that he served 118 days of his sentence before the hearing was reversed. (SAC ¶ 34).

[13] Although plaintiff included a due process claim against defendant Bauersfeld in his second amended complaint, Judge Hurd dismissed that claim based on the statute of limitations.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp*., 550 U.S. at 555).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court's consideration is limited to the factual allegations as stated in the complaint, documents attached to the complaint as exhibits or incorporated into the complaint by reference, and matters of which the court can take judicial notice. *Portillo v. Webb*, No. 16 Civ. 4731 (VEC/GWG), 2017 WL 4570374, at *1 (S.D.N.Y. Oct. 11, 2017) (quoting *Brass v. Am. Film Tech*., 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). A court may take judicial notice of a public record pursuant to Fed. R. Evid. 201(b). *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

## III. <u>Retaliation</u>

### A. Legal Standards

To state a First Amendment claim of retaliation, an inmate must allege facts plausibly suggesting that (1) the speech or conduct at issue was protected, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected conduct and the adverse action. *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014)(citations omitted). The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Faulk v. Fisher*, 545 F.

App'x 56, 58 (2d Cir. 2013) (quoting *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir. 2003)). In other words, we must examine prisoners' claims of retaliation with "skepticism and particular care." *Rivera v. Goord*, 119 F.Supp 2d 327, 339 (S.D.N.Y. 2000) (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)). Accordingly, a First Amendment retaliation claim must be supported by "specific and detailed factual allegations," and not stated in "wholly conclusory terms." *Dolan v. Connolly,* 794 F.3d 290, 295 (2d. Cir. 2015) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 (2002)).

In order to satisfy the final prong, "the causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Cruz v. Grosso,* No. 9:13-CV-30 (FJS/TWD), 2014 WL 2176256, at *6 (N.D.N.Y. May 23, 2014) (citing *inter alia Colon,* 58 F.3d at 873). Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, including temporal proximity between the protected activity and the alleged retaliatory act, and statements by the defendant concerning his or her motivation.[14] *Cruz,* 2014 WL 2176256, at *6 (citing *Colon*, 58 F.3d at 872-73). However, temporal proximity alone is not enough to establish a causal connection. The Second Circuit has held that where "timing is the only basis for a claim of retaliation . . . an inference of retaliation does not arise." *Thomas v. Waugh,* No. 9:13-CV-0321 (MAD/TWD), 2015 WL 5750945, at *15 (N.D.N.Y. Sept. 30, 2015) (quoting *Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 95 (2d Cir. 2001).

---

[14] This court recognizes the existence of other factors, as discussed in *Colon,* applicable only when the alleged adverse action is the issuance of a misbehavior report.

**B. Application**

As stated above, due to dismissal based on the statute of limitations, the only claim remaining in this action is the retaliation claim against defendant CHO Bauersfeld. The retaliation claims against Sgt. Van Fleet and CO Perkins, together with the due process claim against defendant Bauersfeld have been dismissed based on the expiration of the statute of limitations. Plaintiff claims that defendant Bauersfeld retaliated against him by finding him guilty, even though he knew that the claim would later be reversed based on the procedural defect in the search. Plaintiff claims that the entire course of retaliatory conduct began with Sgt. Van Fleet, who retaliated against plaintiff for his complaints against him by engaging CO Perkins to plant a weapon in plaintiff's cell, resulting in retaliation by defendant Bauersfeld, who was aware of plaintiff's grievances and complaints against Sgt. Van Fleet as well as the claims against CO Perkins. It is well-settled that filing a grievance or lawsuit is constitutionally protected conduct. *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir.2001); *Graham v. R.J. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). Thus, plaintiff's allegations meet the first prong of the retaliation analysis.

Defendant Bauersfeld found plaintiff guilty of misbehavior and sentenced him to a substantial amount of time in SHU. Thus, plaintiff's allegations state a claim for adverse action. The causation prong of the retaliation analysis is the more problematic in this case. Plaintiff states that defendant Bauersfeld knew about the grievances against Sgt. Van Fleet because plaintiff submitted them as evidence in his disciplinary

hearing, defendant Bauersfeld referenced the grievances in his decision. (*See* Pl.'s Ex. 15 at 2). Plaintiff claims that defendant Bauersfeld's motive for finding him guilty must have been retaliation for the complaints/grievances, because he knew that the weapon was obtained in violation of DOCCS regulations and should not have been admitted as evidence against plaintiff at the hearing. Plaintiff states that his claim is substantiated because the hearing was ultimately reversed for the same reason.

Defendant argues that plaintiff fails to state a claim of retaliation against CHO Bauersfeld, in part because plaintiff cannot establish retaliation by defendant Bauersfeld for complaints that plaintiff made against another officer.[15] *See e.g. Lewis v. Hanson*, No. 9:18-CV-0012 (LEK/DJS), 2020 WL 1812556, at *13 (N.D.N.Y. Apr. 9, 2020) (citing inter alia *Hare v. Hayden*, No. 09-CV-3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant."); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (same)). However, as the court pointed out in *Lewis*, other cases have declined to dismiss retaliation claims simply because the "underlying protected activity was directed to a third party." *Id.* (citing *Funches v. Russo*, No. 17-CV-1292, 2018 WL 6982087, at *5 (N.D.N.Y. Nov. 2, 2018) (declining to dismiss retaliation claims where protected activity was directed against third party), *report and recommendation adopted as modified by* No. 17-CV-1292, 2018 WL 6381058 (N.D.N.Y. Dec. 6, 2018) (Kahn, J.); *Ford v. Martuscello*, No.

[15] Defendant also argues that there were other reasons to find plaintiff guilty of the misbehavior, so that he would have been found guilty regardless of the grievances. The court must accept plaintiff's allegations as true in a motion to dismiss, and the defendant's argument would be stronger if made in a motion for summary judgment as discussed below.

9:14-CV-01566 (DNH/DEP), 2016 WL 5322166, at *5 (N.D.N.Y. June 23, 2016) (the fact that none of the grievances were alleged to have been filed against defendants was not dispositive of whether plaintiff stated a retaliation claim against them), *report and recommendation adopted,* 2016 WL 5256901 (N.D.N.Y. Sept. 22, 2016)).

In *Ford*, the court denied a motion to dismiss a retaliation claim in which plaintiff was alleging retaliation by defendants who were not the subjects of plaintiff's grievance, where plaintiff plausibly alleged that the defendants were aware of the grievances, and there was temporal proximity between the protected conduct and the defendants' alleged retaliation. 2016 WL 5322166, at *5 (citing *Jean-Laurent v. Lane*, 11-CV-0186 (NAM/TWD), 2013 WL 600213, at *9 (N.D.N.Y. Jan. 24, 2013) ("Although Lane was not himself the subject of Plaintiff's lawsuit, the temporal proximity between Lane's learning of the lawsuit against other correctional officers and charging Plaintiff with a rule violation makes a facially plausible showing of causation [for purposes of a First Amendment Retaliation claim]."), *report-recommendation adopted by* 2013 WL 599893 (N.D.N.Y. Feb. 13, 2013); *Hernandez v Goord*, 312 F. Supp. 2d 537, 545 (S.D.N.Y. 2004) (denying motion to dismiss retaliation claim where plaintiff did not expressly allege that corrections officers that engaged in adverse action were the subject of the grievances filed by plaintiff); *Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002) ("However unlikely it may appear to a court from a plaintiff's complaint that he will ultimately be able prove an alleged fact . . . , the court may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference.").

Given the cases cited above, and in the procedural posture of a motion to dismiss for failure to state a claim, this court finds that plaintiff has plausibly stated a claim against defendant Bauersfeld for retaliation. Plaintiff alleges and shows by exhibit that defendant Bauersfeld knew about the grievances before he found plaintiff guilty of the misbehavior because he considered them in his decision. Thus, there are allegations amounting to adverse action and there temporal proximity. The ultimate merit of such a claim is unknown, but in a motion to dismiss, the court must accept plaintiff's allegations as true, and pro se pleadings "'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted)). *See also Tracy v. Freshwater*, 623 F. 3d 90, 101-02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants). This court makes no finding as to whether the claim could survive a properly supported motion for summary judgment, which could include more factual development regarding the disciplinary hearing and an affidavit by the defendant.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Clerk is directed to file plaintiff's Exhibits 1-27 from Dkt. No. 1 with the SAC at Dkt. No. 17, and it is

**RECOMMENDED**, that defendant Bauersfeld's motion to dismiss (Dkt. No. 21) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such

objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: August 11, 2020

Andrew T. Baxter
U.S. Magistrate Judge